[L. A. No. 20939.   In Bank.   Mar. 21, 1950.]

Estate of CLARA ROOD AKELEY, Deceased.   RUSSELL LEMMON, as Executor, etc., et al., Respondents, v. STATE OF CALIFORNIA, Appellant.

Fred N. Howser, Attorney General and Elizabeth Miller, Deputy Attorney General for Appellant.

Sidney N. Bachtell, B. Dean Clanton and Newby, Holder & Newby for Respondents.

SHENK, J.—This appeal from the decree of final distribution presents for consideration the question of the correctness of the probate court's interpretation of the residuary clause in the will of the decedent.

Clara Rood Akeley died on November 1, 1947. She left an holographic will dated November 14, 1946, declaring that she was unmarried and had no living relatives of any degree of kindred. She made several specific bequests to individuals, appointed Russell Lemmon executor, and provided for further distribution in the following words:

"Fifth, all the rest, residue and remainder of my estate I give and bequeath as follows

25 per cent to the Childrens Home Society of Calif

25 per cent to the Mary Martha Home for Girls 632 Brittania Street, Los Angeles Calif

25 per cent to Los Angeles Society for the Prevention of Cruelty to animals, 3612 11th Ave Los Angeles, In the event the total of the bequests to the above named Charitable organizations shall exceed the portion of my Estate that I may legally give for charitable purposes, then all such bequests shall be proportionately reduced to the extent, that the total of such bequests shall not exceed the maximum amount that I may legally give to Charity, and in such event, I give devise and bequeath to Russell Lemmon the Executive named, all the residue of my estate, free from Trust, But with the request that he shall distribute the same in such manner, as I shall have indicated to him."

In his petition for distribution the executor alleged an uncertainty as to the proper distribution of the residue of the estate, and raised the question whether in accordance with the manifest intention to dispose of all of the residue it should be distributed one-third to each of the named charitable organizations; or whether the testatrix died intestate as to one-fourth of the residue in which event such portion would escheat to the State of California.

The State of California, through the attorney general, filed a statement of claim by escheat to one-fourth of the residue of the estate. After a hearing the court found that it was the intention and purpose of the testatrix to dispose of all of the residue of her estate to the three named organizations in equal shares and so ordered distribution of the residue which amounts to $41,023.19.

The State of California appealed, asserting that there is no ambiguity or uncertainty in the language of the will but that the specific residuary bequests require a finding that the testatrix failed to dispose of one-fourth of the residue of her estate which is distributable to the State of California as escheated property pursuant to section 231 of the Probate Code.

The controlling rule is stated in section 101 of the Probate Code which provides that a will is to be construed according to the intention of the testator. All other rules of construction are subordinate to this cardinal rule and in its

application presumptions are to be indulged which will prevent entire or partial intestacy. (*Estate of Blake,* 157 Cal. 448, 458-459 [108 P. 287].) ▪ Presumptions against intestacy are especially applicable in construing residuary clauses, since generally they are employed for the purpose of making complete disposition of the testator's property.

▪ Constructions leading to intestacy either in whole or in part are not generally favored but will be rejected when the language is reasonably effective to dispose of the entire estate; and liberal interpretation is employed to that end. (*O'Connor v. Murphy,* 147 Cal. 148, 153 [81 P. 406]; *Estate of Hoytema,* 180 Cal. 430, 432 [181 P. 645]; *Estate of Beldon,* 11 Cal.2d 108, 111 [77 P.2d 1052]; *Estate of Northcutt,* 16 Cal.2d 683 [107 P.2d 607]; *Estate of Lawrence,* 17 Cal.2d 1, 7 [108 P.2d 893].)

▪ Words denoting percentages have a technical meaning and "25 per cent" mathematically equals one-fourth of the whole. The attorney general assumes that the probate court was bound by the mathematical percentages specified by the testatrix and that the use of any other language could not be deemed to create ambiguity with the specified percentages. However, there is no rule of construction which would prevent the court from applying the language of a will in accordance with the manifest intention of the testatrix even though to do so would require an interpretation not in accord with the technical meaning of words used. ▪ On the contrary it is the duty of the court so to construe the language that it will conform to the testatrix' intention as disclosed by the will rather than to defeat such intention by strict adherence to the technical sense of particular words. Especially in cases where the will is not drawn by an attorney words which are repugnant to the clear intention disclosed by other parts of the instrument may be regarded as surplusage or restricted in application since to do otherwise would be to defeat the intention. (*Estate of Wood,* 36 Cal. 75.)

▪ The attorney general relies on the rule stated on page 112 of *Estate of Beldon, supra* (11 Cal.2d) namely: That a testator has the right to make a will which does not dispose of all of his property but which leaves a residue to pass to his heirs under the laws of succession; that such a will is not the usual one but when the language clearly leads to that result it must be given effect accordingly. The statement is not applicable in the present case because the testatrix left

no surviving heirs. The will on its face shows that the un-married testatrix was fully aware of the fact that she had no heirs or relatives, and that she intended to dispose of all of her estate. The words of gift of ''all the rest, residue and remainder of my estate'' to the three named organizations, and in the event the bequest was in excess of that permitted by law then to Russell Lemmon free of trust for distribution by him as she would privately indicate, discloses an intention to dispose of all of the residue to the organizations named unless there were legal restrictions limiting the amount she could leave to charity. It is conceded that there were no applicable limitations and no relatives have appeared to claim any part of the estate.

The language showing a purpose and intention to dispose of the entire estate, and the use of the specified per-centages aggregating less than the whole, created an ambigu-ity which it was necessary to resolve before distribution could be ordered. The language of the will and the surrounding circumstances, namely that the testatrix was unmarried, that she had no relatives of any degree of kindred, that this con-dition was contemplated by the testatrix, and that she drafted the will herself, are deemed to have been considered by the court in arriving at the interpretation which would conform to the testatrix' intention as expressed by her will. The am-biguity was reasonably resolved in accordance with the court's finding by the language of the will in the light of the circum-stances disclosed (Prob. Code, § 105; *Estate of Seay,* 180 Cal. 304, 306 [181 P. 58]); and the mathematical figures were properly disregarded as surplusage when a different intention appeared by the language of the will drafted solely by the testatrix. (Prob. Code, § 106; *Estate of Northcutt, supra,* 16 Cal.2d 683, 688.)

As indicated by this court's decision in *Estate of Northcutt* (at pp. 690-691 citing many cases), where the construction placed on the language of the will by the probate court is reasonable and appears to be consistent with the testatrix' ex-pressed intention the appellate court will not substitute an-other although equally tenable interpretation.

The foregoing rules of construction and review are deter-minative of the questions relating to interpretation of the fifth provision in the will. The rules and decisions relied on by the attorney general are inapplicable to control a different result considering the particular facts of this case.

The respondents who are the distributees named in the

decree of distribution contend that the state was not an aggrieved party and was not entitled to take the appeal. The contention is based on the assertion that the state in no event could become a distributee since, so it is claimed, Russell Lemmon was named as the residuary legatee to take any portion not distributable to the named organizations. It was assumed on the hearing before the probate court that the alternate residuary legatee would take only if the bequest to the organizations was in excess of that permitted by law and, that condition not obtaining, any undistributed portion would escheat to the state. It is here also assumed that the State of California would be a distributee as to one-fourth of the residue had the court made a contrary finding on the particular issue of interpretation presented by the executor. In any view of the case, however, the state had a possible interest depending on the interpretation of the fifth provision of the will, and it was a party aggrieved by the decree distributing the property otherwise. It was therefore entitled to appeal.

The decree is affirmed.

Gibson, C. J., Carter, J., Schauer, J., and Spence, J., concurred.

TRAYNOR, J., Dissenting.—In the fifth clause of her will, the testatrix made three bequests, each representing 25 per cent of her residuary estate. Twenty-five per cent thus remained unbequeathed. It is immaterial whether the omission of a fourth beneficiary was intentional or inadvertent; obviously the court cannot add a beneficiary. Likewise it cannot increase the amount of the bequests; the will specifies 25 per cent and there is no evidence that $33\frac{1}{3}$ per cent was intended. The introductory clause, "all the rest, residue and remainder of my estate I give and bequeath as follows," designates the fund from which the bequests were to be paid. The legatees and quantum thereof were specified "as follows"; there were three legatees, and each was to receive one-fourth of the fund. There is no evidence that testatrix intended that they should also receive proportionate shares of the remaining one-fourth of the fund.

In reading such an intention into the will the majority opinion relies on the presumption against intestacy. There is, however, "no room for the application of the rule [against intestacy] if the testator's language, taken in the light of surrounding circumstances, will not reasonably admit of more

than one construction. A court's inquiry in construing a will is limited to ascertaining what the testator meant by the language which he used. If he used language which results in intestacy, and there can be no doubt about the meaning of the language which was used, the court must hold that intestacy was intended." (*Estate of Beldon,* 11 Cal.2d 108, 112 [77 P.2d 1052]; *Estate of Hoytema,* 180 Cal. 430, 432 [181 P. 645]; *Estate of Lyons,* 36 Cal.App.2d 92, 95 [96 P.2d 1018]; *Estate of Sullivan,* 31 Cal.App.2d 527, 529-530 [88 P.2d 225]; *Estate of Maloney,* 27 Cal.App.2d 332, 336 [80 P.2d 998].)

I cannot agree that this court is bound under applicable rules of appellate review to affirm the trial court's interpretation of the will. The will clearly prescribes the disposition of only 75 per cent of the testatrix' residuary estate. It is not for the trial or appellate court to rewrite her will by enlarging her bequests on the conjecture that the failure to bequeath 25 per cent was unintentional and that had it been pointed out to the testatrix, she would have divided it equally among the three specified beneficiaries rather than have given it to a fourth beneficiary.

The majority opinion relies on *Estate of Northcutt,* 16 Cal. 2d 683 [107 P.2d 607], for the proposition that "where the construction placed on the language of the Will by the probate court is reasonable and appears to be consistent with the testatrix' expressed intention the appellate court will not substitute another although equally tenable interpretation." It is conceded that the trial court's interpretation of the will was based solely on its terms, without the aid of any extrinsic evidence. The dictum of the Northcutt case is not applicable to the interpretation of a document when there is no extrinsic evidence. "Whatever confusion might have existed in the law on this subject prior to 1942 was set at rest by the decision in *Estate of Platt,* 21 Cal.2d 343 [131 P.2d 825]. Since the decision of that case it is settled law that the interpretation of a document, including a will or a decree, is a question of law, and that it is the duty of an appellate court in such cases to interpret the document independent of the construction given to it by the trier of the fact, and to make a final determination in accordance with the applicable principles of law." (*Estate of Norris,* 78 Cal.App.2d 152, 159 [177 P.2d 299]; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]; *Western Coal & Mining Co.* v. *Jones,* 27 Cal.2d 819, 826-827 [167 P.2d 719, 164 A.L.R. 685]; *Union Oil Co.* v.

*Union Sugar Co.,* 31 Cal.2d 300, 306, 318 [188 P.2d 470];
*Estate of Pearson,* 90 Cal.App.2d 436, 438[203 P.2d 52].)

The only evidence of testatrix' intention is her will. It offers no support for the construction placed upon it by the trial court and by the majority opinion herein. I would therefore reverse the decree of distribution and direct the escheat to the State of California of 25 per cent of the residuary estate.

Edmonds, J., concurred.