**In re the WILL of Mary R. ASHBROOK.**

Court of Chancery of Delaware,
Kent County.

May 10, 1972.

---

2. Another mechanic's lien action on this matter is presently in progress between the parties.

Maurice A. Hartnett, III, Dover, for executor-petitioner.

William H. Vaughn, Dover, for Charles Wiest, optionee.

N. Maxson Terry, Jr., Dover, for Carmen A. Dixon, residuary legatee.

David A. Eastburn, Wilmington, for certain legatees.

Converse Murdock, Wilmington, for a legatee.

SHORT, Vice Chancellor:

In this action Farmers Bank, Executor under the will of Mary R. Ashbrook, seeks instruction as to the proper construction of portions of the last will of the testatrix dealing with disposal of testatrix' farm in Kent County, Maryland. Specifically, the executor seeks instruction regarding the proper source of funds for the payment of estate and inheritance taxes levied upon the transfer of and right to receive the farm. Although no formal motions have been made, briefs have been filed by the parties in interest and I will consider the case as one submitted under cross-motions for summary judgment.

The facts involved are basically undisputed. Mary R. Ashbrook died testate in 1970. Her last will, executed in 1961, gave an option to Charles Wiest, the son of a long-term tenant on testatrix' farm, to purchase the farm for the sum of $12,000.[1] Whether or not Wiest chose to exercise his option, the farm was to be sold, and the proceeds of sale given in equal shares to the first cousins of testatrix.

Wiest has chosen to exercise his option to purchase the farm. However, the present value of the farm has been appraised for estate and inheritance tax purposes as $72,940. The question then arises as to who should bear the burden of estate and inheritance taxes on the value of Mrs. Ashbrook's bequest to Mr. Wiest, the difference in value between the option price and the appraised value of the farm.

The statutory law which governs the determination of this question in Delaware is contained in 12 Del.C. §§ 2901–2906. Section 2901 provides that state and federal estate taxes are to be apportioned among the beneficiaries of an estate " . . . in the proportion, as near as may be, that the value of the property, interest or benefit of each such person bears to the total value of the property, interests, and benefits received by all such persons . . ." Section

---

[1] Item IX provides, in pertinent part:

"ITEM IX. I give and grant to Charles Wiest, the son of J. Harvey Wiest who was a tenant on my farm for over forty years, the exclusive option and right to purchase, within one year after this Last Will and Testament shall have been duly admitted to probate, my farm situated in Kent County and State of Maryland for the sum of Twelve Thousand ($12,000.00) Dollars. Should the said Charles Wiest exercise the aforesaid option and shall pay to my executor the said sum of Twelve Thousand Dollars then I do authorize, direct and empower my executor upon payment of said sum of twelve thousand dollars to sell said farm to Charles Wiest and to make, execute and deliver to him a good and sufficient deed conveying title thereto, free of all liens and without liability on the part of the said Charles Wiest for the application or non-application of said purchase price."

2906 provides an exception to this rule, however, where " . . . a testator provides in his will for another method of apportionment or allocation of the taxes referred to in section 2901 of this title . . ." These statutes have been construed by our courts to mean that federal and state estate taxes will be apportioned among the beneficiaries under a will unless the will shows a clear expression of intent to the contrary. Wilmington Trust Co. v. Copeland, 33 Del.Ch. 399, 94 A.2d 703 (1953); Carlisle v. Delaware Trust Co., 34 Del.Ch. 133, 99 A.2d 764 (1953).

Wiest contends that the words of testatrix authorizing the executor to deliver to him " . . . A good and sufficient deed . . . free of all liens . . ." show clearly and unambiguously that the testatrix intended that he not be liable for payment of estate taxes on his bequest. On the other hand, the beneficiaries of the proceeds of sale of the farm and the residuary beneficiary argue that the word "liens" should not be construed to include tax liens, but only liens existing prior to testatrix' death. In any event, they argue, no clear expression of testatrix' intent appears, and therefore the statutory scheme of apportionment applies. Finally, the residuary beneficiary maintains that, even if Wiest is not liable for the estate taxes on his bequest, those taxes should be paid out of the proceeds of the sale of the farm to Wiest. In that situation, the residuary beneficiary would construe the term "proceeds" to mean that only the net proceeds of the sale—sale price less all taxes—should be distributed to the beneficiaries of the proceeds of sale.

In determining testatrix' intent, the holdings in prior cases are of limited value since each case stands on its own facts. In any case, counsel have cited, and I can locate, only one prior case construing similar language in a will. In re Pearson's Estate, 90 Cal.App.2d 436, 203 P.2d 52 (1949), involved the construction of a will containing the language " . . . said real property and premises herewith devised shall be free and clear of all liens of any kind and character and description, and if there are any such liens at the time of my death, the same shall be first paid and discharged by my executor . . ." The court held that the properties devised were free of death taxes. It interpreted the phrase "liens at the time of my death" as indicative of intent to include federal estate and state inheritance taxes. This interpretation is questionable. In any event no such phrase appears in the Ashbrook will. Moreover, the result reached in the *Pearson* case has been questioned in a later decision of the same court. See Estate of Hendricks, 11 Cal.App.3d 204, 89 Cal.Rptr. 748 (1970).

The courts of this state have held that 12 Del.C. § 2901 reflects a strong public policy in favor of apportionment of estate taxes, and that in order to prevent apportionment a testator must clearly express a contrary intention. Wilmington Trust Co. v. Copeland, *supra*. Here there is no express provision dealing with the burden of taxes. In the absence of any such reference, use of the phrase "free of all liens" to describe the title to be taken by Wiest could as easily refer to the usual liens and encumbrances on title as to liens for death taxes. On these facts, I cannot say that there is a clear expression of intent that Wiest's bequest should be free of estate and inheritance taxes.

I thus conclude that Wiest, having exercised his option to purchase the farm, is liable for estate and inheritance taxes on the difference between the option price and the appraised value of the farm.

An appropriate order may be submitted on notice.